FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 18, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JUAN ANTONIO S.,

       Plaintiff,

  v.

LELAND DUDEK, ACTING
COMMISSIONER OF SOCIAL
SECURITY,[1]

       Defendant.

No: 1:24-cv-03108-RLP

ORDER AFFIRMING THE
COMMISSIONER'S DECISION

---

[1] On February 18, 2025, Leland Dudek became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Rules of Civil Procedure, Leland Dudek is substituted for Carolyn Colvin as the Defendant in this suit.

ORDER - 1

1    BEFORE THE COURT is an appeal from an Administrative Law Judge

2    (ALJ) final decision denying disability income benefits under Title II of the Social

3    Security Act. ECF No. 7. The Court considered the matter without oral argument.

4    For the reasons discussed below, the Court concludes the ALJ did not err by failing

5    to apply a disability freeze period to extend Mr. S.'s date last insured. Because Mr.

6    S.'s disability freeze argument is unsuccessful, Mr. S.'s other assignments of error

7    also fail. Therefore, Mr. S.'s brief, ECF No. 7, is denied and the Commissioner's

8    brief, ECF No. 13, is granted.

9                                    BACKGROUND

10    The facts of the case are set forth in the administrative hearings and

11    transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and

12    are therefore require only brief summary.

13    In 2012, Mr. S. was sustained a neck injury while working as a manual laborer

14    in a meat warehouse. He had neck surgery in January 2013. Tr. 65, 1826. The

15    surgery resolved some symptoms, but he still claimed to suffer from muscle

16    tightness and pain. Tr. 69. Mr. S. experiences anxiety, depression, and panic attacks,

17    which he testified worsened after his 2013 neck surgery. Tr. 65, 73, 1828. According

18    to Mr. S., anxiety and depression impact his ability to concentrate and communicate.

19    Tr. 74.

20    Mr. S. filed this claim for disability insurance benefits in November 2019,

21    alleging his ability to work is limited by anxiety, depression, and panic attacks, and

ORDER - 2

1  that his neck injury limits his mobility and ability to focus and perform daily tasks.

2  Tr. 303.

3  ANALYSIS

4  To qualify for disability benefits under Title II of the Social Security Act, a

5  claimant must establish he was disabled prior to the date he was last insured. *See* 42

6  U.S.C. § 423(c); 20 C.F.R. § 404.1520. Here, the ALJ determined Mr. S. was last

7  insured on December 31, 2017. The ALJ also found that Mr. S. was disabled as of

8  July 2, 2012. However, the ALJ found Mr. S.'s condition had improved and his

9  disability therefore ended on October 1, 2015. Because the ALJ found Mr. S. was no

10 longer disabled as of his last date insured, benefits were denied.

11 Mr. S. argues that the ALJ committed legal error in failing to extend his last

12 date insured. Mr. S. does not dispute that December 31, 2017, is his properly

13 calculated date last insured based on quarters of earned coverage. But Mr. S. argues

14 the ALJ should have applied a disability freeze from July 2, 2012 to October 1,

15 2015. According to Mr. S., the disability freeze would have extended his last date

16 insured by over three years; i.e., into mid-2021. Furthermore, because Mr. S. alleges

17 he again became disabled in 2019, he contends the ALJ committed legal error by

18 failing to assess whether Mr. S. was disabled as of his date last insured.

19 While this Court reviews an ALJ's factual determinations for substantial

20 evidence, allegations of legal error are reviewed de novo. *Mingo v. Heckler*, 745

21 F.2d 537, 538 (9th Cir. 1984).

ORDER - 3

1     Mr. S.'s reference to the concept of a disability freeze comes from the Social

2    Security Administration's Program Operations Manual System (POMS) which

3    defines a "disability freeze" as a "period of disability during which earnings are

4    eliminated from computation."[2]  POMS DI 26001.010. The purpose of the disability

5    freeze is to eliminate years of low earnings due to disability from the computation of

6    benefits and preserve insured status. POMS DI 10105.005A.

7         The federal regulations do not use the term "disability freeze." Rather, they

8    provide as follows:

9         (a) General. A period of disability is a continuous period of time
          during which you are disabled. If you become disabled, you may
10        apply to have our records show how long your disability lasts. You
          may do this even if you do not qualify for disability benefits. **If we**
11        **establish a period of disability for you, the months in that**
          **period of time will not be counted in figuring your average**
12        **earnings.** If benefits payable on your earnings record would be

13        [2] Agency policy set forth in POMS may be persuasive authority, *Warre v.*

14   *Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006), but "does not

15   impose judicially enforceable duties on either [the] court or the ALJ." *Carillo-*

16   *Yeras*, 671 F.3d 731, 735 (9th Cir. 2011); see also *Lockwood v. Comm'r*, 616 F.3d

17   1068, 1073 (9th Cir. 2010) ("POMS does not impose judicially enforceable duties

18   on the SSA"); *Durden v. Colvin*, 549 Fed. App'x 690, 690-91 (9th Cir. 2013) ("the

19   POMS does not have the force and effect of law and, thus, does not impose

20   judicially enforceable duties on the ALJ").

21

ORDER - 4

denied or reduced because of a period of disability, the period of disability will not be taken into consideration.

(b) Who is entitled. **You are entitled to a period of disability if you meet all the following conditions**:

   (1) You have or had a disability as defined in § 404.1505.

   (2) You are insured for disability, as defined in § 404.130 in the calendar quarter in which you became disabled, or in a later calendar quarter in which you were disabled.

   (3) You file an application while disabled, or no later than 12 months after the month in which your period of disability ended. If you were unable to apply within the 12-month period after your period of disability ended because of a physical or mental condition as described in § 404.322, you may apply not more than 36 months after the month your disability ended.

   (4) At least 5 consecutive months go by from the month in which your period of disability begins and before the month in which it would end.

20 C.F.R. § 404.320 (emphasis added).

As used in the regulations, the phrase "period of disability" is a term of art. "It does not mean simply a period during which a person is disabled and not working." *Sprow v. Bowen,* 865 F.2d 207, 208 (9th Cir.1989). Instead, "[t]he person must, in addition, be insured." *Id*. The impact of a period of disability on a claimant's insured status is set by 20 C.F.R. § 404.110(c).

It is undisputed that Mr. S. was not disabled at the time of his last date insured 2017; yet he did not apply for Title II benefits until 2019, after the alleged

ORDER - 5

1 | recurrence of his disability. Given this timeline, he receives no benefit from

2 | application of a disability freeze. As explained by the Ninth Circuit, "an individual

3 | cannot receive disability benefits for a recurrence of a disability, after a period of

4 | medical improvement when the individual was no longer disabled under the Act,

5 | unless the individual can establish that the *current* period of disability began on or

6 | prior to the expiration of insured status." *Flaten v. Sec'y of Health & Hum. Servs.*,

7 | 44 F.3d 1453, 1458 (9th Cir. 1995). Furthermore, an application for benefits must

8 | be filed during a covered period of disability, "or within 12 months of the end of

9 | the period of disability." *Id*. at 1460.

10 | Relying on *Flaten* and § 404.320, District Courts in the Ninth Circuit have

11 | rejected arguments like those made by Mr. S. *See David D. v. Saul*, 2019 WL

12 | 8631482, at *2 (C.D. Cal. Dec. 16, 2019); *Bihil v. Colvin*, 2016 WL 4154852, at *7

13 | (N.D. Cal. Aug. 5, 2016); *Lanier v. Colvin*, 2014 WL 62281, at *4 (E.D. Wash. Jan.

14 | 8, 2014); *see also Keating v. Shalala*, 1994 WL 72162, at *3 (N.D. Cal. Mar. 1,

15 | 1994).

16 | Mr. S. cites a Seventh Circuit case discussing the disability freeze and argues

17 | the policy discussion contained therein supports his position. ECF No. 14 at 5-6;

18 | *Ransom v. Bowen*, 844 F.2d 1326 (7th Cir. 1988). Consistent with *Flaten* and 20

19 | C.F.R § 404.320(a), the *Ransom* court observed that a disability freeze operates to

20 | exclude years within a period of disability from the computation of the claimant's

21 | average monthly earnings. 844 F.3d at 1331. However, *Ransom* involved unique

ORDER - 6

1  facts which were not covered by the Social Security Act disability freeze rules, and

2  the case did not discuss the eligibility requirements of 20 C.F.R 404.320(b) or the

3  POMS. The Court is not persuaded by *Ransom* or the out-of-circuit unpublished

4  opinions cited by Mr. S., which do not consider 20 C.F.R. § 404.320.  ECF No. 14 at

5  3; *Jamileh B. v. Kijakazi*, 2023 WL 3172620, at *4 (N.D. Ill. May 1, 2023); *Ford v.*

6  *Colvin*, 2015 WL 4608136, at *6 (D. Del. July 31, 2015).

7         Based on the foregoing, the Court concludes the ALJ did not err by not

8  applying a disability freeze to the calculation of Mr. S.'s date last insured. As a

9  result, the ALJ correctly identified December 31, 2017 as Mr. S.'s date last insured.

10         Mr. S. makes additional arguments which only have merit if his date last

11  insured is extended by a disability freeze. ECF 7 at 6-10. Because the Court rejects

12  Mr. S.'s position regarding the disability freeze, these remaining arguments

13  necessarily fail. Mr. S. raises the concern that the ALJ's decision creates a harmful

14  *res judicata* effect for his post 2017 allegations of disability. The Court disagrees.

15  Any findings regarding Mr. S.'s post 2017 condition were beyond the scope of the

16  ALJ's review. Tr. 1774. Furthermore, the Government denies the ALJ's findings

17  with respect to Mr. S.'s application for benefits under Title II of the Social Security

18  Act would have preclusive effect over his application for benefits under Title XVI,

19  which was filed in 2019 and is governed by a different time frame. ECF No. 13 at 6-

20  8. This likely estops the government from later asserting a contrary position.

21

ORDER - 7

1    CONCLUSION

2         Having reviewed the record and the ALJ's findings, this Court concludes the

3    ALJ's decision is supported by substantial evidence and free of harmful legal error.

4    The Court affirms the Commissioner's decision.

5         Accordingly,

6         1. Plaintiff Mr. S.'s Brief, **ECF No. 7**, is **DENIED**.

7         2. Defendant Commissioner's Brief, **ECF No. 13**, is **GRANTED**.

8         **IT IS SO ORDERED**. The District Court Clerk is directed to enter this

9    Order and provide copies to counsel. Judgment shall be entered for the Defendant

10   Commissioner and the file shall be **CLOSED**.

11        **DATED** February 18, 2025.

12

13        REBECCA L. PENNELL
          United States District Judge

14

15

16

17

18

19

20

21

ORDER - 8